DORE, Judge.
Plaintiff is a member of the Associated Branch Pilots of the Port of Lake Charles, Louisiana, sometimes otherwise known as Lake Charles Pilot Association and Lake Charles Pilots, hereinafter referred to as the Association, a voluntary association at the time of the filing of the suit, composed of Daniel Jessen, James P. Forrest, Lester Z. Cole, Ernest F. Clooney, George D. Carpenter, Kenneth Gonzales, Sam Hale and plaintiff.
He brings this suit against the said Association seeking a judgment against it for the sum of $684.39, with interest thereon at the rate of five per cent per annum from date of judicial demand until paid and costs, and against the other members of the said association, in solido, each for one-seventh of the said sum of $684.39, with interest and costs.
*358 The claims are based on separate items as follows:
(1) Óne-seventh of $427.42 expended by the Association during the month of February, 1947, for repairing the Association’s pilot boat while he, plaintiff,' was inactive and did not participate in the earnings of the Association during the said month, contrary to the Articles of Agreement, by-laws and its rules and customs of the said Association, the amount being $61.06.
(2) Fines totaling the sum of $200 which were deducted from his earnings in January, 1948, and which fines he did not owe, he having committed no act of omission or commission which could or would justify the Association in imposing said fines upon him. In the alternative, in the event he did owe the fine or fines (which he denies), then he avers that the amount thereof would constitute an asset of the Association and not a fund available for distribution to only a part of its members.
(3) The sum of $30 for the performance of an extra day’s work when, on July 16, 1948, contrary to the rules and customs of the Association, he was ordered to take out the “Narica” from Lake Charles to sea.
(4) The sum of $360 for not being given the opportunity of shifting ships, in accordance with a custom of the Association, during the period of December 1, 1947, through November 30, 1948. This item is no longer 'in contest.
The defendants, in their answer, deny that the item of $61.06 deduction was not a proper charge and they specifically allege that such deduction, in accordance with the by-laws, rules, regulations and customs, was a proper one, and that the controversy had been compromised and settled by refunding t.o the plaintiff, on August 1, 1947, the sum of $53.57, which was accepted by him in full settlement of any and all claims which he might have against the Association in connection with the purported claim of $61.06. i In regard to the fines, the defendants deny that the fines were illegally assessed against the plaintiff; they specifically aver that the said fines were imposed for the violations, or refusal of four specific lawful orders ($50 for each violation or refusal to comply with lawful orders), all of said lawful orders being given to plaintiff in January, 1948. As to the demand in the alternative, defendants deny the same. As to the demand regarding the $30, they admit that the plaintiff did pilot the “Narica” from Lake Charles to sea on July 16, 1948, but deny that plaintiff is entitled to any extra compensation.
On these issues, the suit was tried, resulting in a judgment, with written reasons assigned, in favor of the defendants and against the plaintiff, rejecting, plaintiff’s demand at his costs. He has appealed.
As previously stated, plaintiff is a member of the Association. The members of the Association have joined each other for the purpose of piloting ships to and from the sea to the Port of Lake Charles; they pool all of their income and divide the profit equally after the deduction of operating expenses. They are governed by the Articles of Agreement and by-laws and resolutions adopted. The Association is managed by its Secretary-Treasurer, M. C. Morris, Jr., who, it appears, is not a member of the Association. Within certain limits, the Secretary-Treasurer, has absolute authority to call any member of the Association in an emergency or in case of need, and, according to the by-laws, should anj"' one fail to respond to such call, unless he or the members of his immediate family are seriously ill; that member of the Association is subject to a fine of $50 for each failure to comply with such orders. With such facts in mind, we shall proceed to discuss the merits of plaintiff’s claims in the order demanded in his petition.
It appears from the evidence that the Association owned a pilot boat, “Nonpareil”, which was operated for the benefit of the Association. The plaintiff was active, by that we mean, 'he worked throughout January, 1947. He- became ill and was inactive for the months of February and March, 1947. During the month of February, the boat needed repairs and *359 was put in dry dock. The “Bama” was chartered in the place of the “Nonpareil”, the charter boat costing $375, and the repairs or expenses incurred for the “Nonpareil” amounted to the sum of- $427.42, one-seventh of which amounts to $61.06, the amount claimed in this suit. He bases his claim on the fact that he was “idle”' and did not participate in the earnings for the month of February, 1947. This is so, but plaintiff loses sight of the fact that he had had the use of this boat during January and the prior months. The evidence reveals that the repairs were brought about by the previous use of the boat and not by any accident or usage during the month of February. The itemized account filed in evidence showing the amount expended on the boat in February, 1947, consists of such items as “Cash (Various items, crew meals & cash spent by S. Vaughn & Clooney) ; Coastal Marine—Repairs to propellor; Haymark Shipyard'— Hauling out & Labor; Home Supply Co.— Boat Material; Bradley’s Machine Shop— Shop work; Swift Service Station—Boat Material.” In other words, these repairs or expenditures were made necessary by the general wear and tear occasioned by usage of the boat. No other boat expense was charged to him. It is a fact that at first he was, charged with one-seventh of the charges for the “Bama” charter but this was refunded to him. It is evident that the repairs made upon the boat must have been necessary to have caused another boat to be chartered. Regardless of his contention that the Articles of Agreement make no provision for a boat expense payment when a pilot is “off the books,” we are, like the trial judge, of the opinion that it is “no more than equitable that the plaintiff should pay his portion of the charges of the repairs on the boat upon which he and the other members of the Association depend for making a living.”
The next claim of the plaintiff is for a refund of $200 for which he was fined. According to Mr. Morris, the plaintiff was fined four times during the month of January, 1948, for refusing and failing to comply with four distinct orders given to plaintiff Fy Mr. Morris, .'viz.:
(1) On the morning of January 15, 1948, to sail the tug “San Marcos”' from the Cities Service Refining Company docks to sea;
(2) On January 16, 1948, to go on watch at Cameron and commence his duties at midnight on the 16th of January, 1948; '
(3) On the same day and date, to go on watch at Cameron at 10:00 o’clock a. m. on the following day, January 17th, and finally,
(4) To go on watch at Cameron at 5:00 o’clock a. m. on January 18, 1948.
We feel that it is unnecessary to go into great detail as to the controversies which gave rise to the alleged orders and their disobedience. Suffice it to say that it is the contention of plaintiff that he was not emphatically given orders as outlined supra, but was misled by Mr. Morris, while Mr. Morris testified that he gave to plaintiff what he considered an order, and that he thought he had made himself clear at each time that it, was an order.
Counsel for plaintiff concedes that solution of the question as to whether the orders were given depends upon the veracity of the testimony of the two witnesses, that is, plaintiff and Mr. Morris, and contends that we should accept the veracity 'of the testimony of the plaintiff. Fortunately, the trial judge has seen fit to give us written reasons and has solved the question for us. He states:
“The four fines which were assessed against the plaintiff, in the opinion of this Court were properly assessed. It is very apparent that the plaintiff has little regard for the Secretary-Treasurer of the organization, either for his veracity or jitdgment. However, since the Secretary-Treasurer has been given the authority to direct the business of the organization, the individual must surrender his individuality and become a working member of the association as are all other members of the association.
“It is apparent from the evidence in this case that plaintiff sought to interpose his own judgment as to the time he should be called and the duties.he should perform rather than accept the orders of the Sec *360 retary-Treasurer, and although the plaintiff may have been right in that it was not his turn to perform the duty he was called upon to perform, since the Secretary-Treasurer had the right to call upon him to perform the duties and to fine him in the event he did not perform, there is, in the opinion of this Court, nothing that can be done to refund the amounts collected.”
As to plaintiff’s alternative demand that the fines should constitute a capital asset of the Association and should not have been distributed to the other six pilots as was done in this case, we find no merit. Plaintiff does not give any reasons why the fines should so constitute a capital asset while defendant gives us cogent and forcible reasons why the fines should be divided amongst the non-offending pilots. We quote from their brief: “The reason for and the purpose of the penalty is to first require strict compliance by members of the association of the orders issued by its duly authorized agent and, secondly, if the order is not complied with, then certain members of. the association would necessarily be compelled to do the work of the violator. Under such circumstances it necessarily follows that the members should be compensated for the work which they were compelled to perform for the violation.”
In regard to the third claim of the extra day’s pay for work performed in connection with taking out the “Narica” to sea, the evidence shows that plaintiff was “on duty”' at the time that he was ordered to take the ship from Lake Charles to sea. He met the ship and sailed it from its dock to sea. The plaintiff has not cited or referred us to any rule or regulation awarding him extra compensation. Certainly the pilotage fee earned by him would become a part of the earnings of the Association to be distributed as all other earnings of the Association.
Finding no error committed by the trial judge, we therefore affirm the judgment appealed from.
J. CLEVELAND FRUGE, J., sitting ad hoc.